IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MALDONADO-CATALA,<br><br>**Plaintiff**<br>    v.<br><br>MUNICIPALITY OF NARANJITO, *et al.*,<br><br>**Defendants.** | **CIVIL NO.** 13-1561 (JAG) |

**OPINION & ORDER**

Plaintiff Maribel Maldonado-Catala ("Plaintiff"), a career employee for the Municipality of Naranjito, filed this Title VII[1] action against the Municipality as well as several of its employees (collectively, "Defendants"), alleging that the defendants took discriminatory and retaliatory actions against her because she was "a woman, lesbian, and had complained of sexual harassment." (Docket No. 1, ¶ 64). Plaintiff also brings supplemental state law claims pursuant to various Puerto Rico laws. (See Docket No. 1, ¶ 2). Prior to filing this suit, Plaintiff exhausted all available administrative remedies through the EEOC. (Docket No. 63).

Pending before the Court is a motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants. Plaintiffs timely filed

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, hereinafter "Title VII."

their opposition, and Defendants their reply. (Docket Nos. 12 and 24, respectively). For the reasons that follow, the Court DENIES the motion to dismiss.

## BACKGROUND

Plaintiff holds a career position with the Municipality of Naranjito as an Emergency Management Technician. (Docket No. 1, ¶ 6-7). Plaintiff is openly lesbian and her sexual orientation is known by all the Defendants. (Id. at ¶ 8). Plaintiff alleges that her co-workers and supervisors subjected her to sexually explicit jokes and harassment regarding her sexual orientation. The jokes included suggestions that one "good sexual encounter" with a male would help rectify her sexual preference. (Id. at ¶ 19). Her co-workers also made disparaging comments stating that gay and/or lesbian relationships are abnormal, dysfunctional and had by persons of questionable moral fiber or intelligence. (Id.). Plaintiff says that these remarks were made with the knowledge and consent of her supervisor at the time, Hiram Bristol-Colon. (Id.). In addition, several harassing emails were sent to Plaintiff from a company computer located at the office of Jose Amaury Figueroa, the Chief of Field Operations. According to the complaint, no one else had access to that computer terminal. (Id. at ¶ 21).

Though Plaintiff never filed a formal complaint for fear of reprisal, she did bring her concerns to the Mayor of the Municipality, Orlando Ortiz Chevres (the "Mayor"). Allegedly, the Mayor instructed Plaintiff to put her complaint in writing and deliver it in a sealed manila envelope to the Director of Human Resources, Marialis Figueroa-Negron. (Id. at ¶¶ 24-25). Though she was assured that her complaint would be addressed, the promise never materialized. (Id. at ¶¶ 25-27). The complaint further alleges that the Mayor and the Director of Human Resources took steps to impair the investigation into the source of the disparaging emails Plaintiff had received. (Id. at ¶¶ 27-32). In spite of the above, the Mayor and the Director of Human Resources appeared to "address the harassment and so requested the resignation from trust service of Bristol-Colon." (Id. at ¶ 34). In addition, other employees that "complained or testified as to the ongoing harassment" were either relocated or terminated. (Id.).

Apparently, all of the above was done in a hush-hush manner. After Bristol-Colon left, word got out that Plaintiff had been involved in his termination, making her "once again the target of harassment and discriminatory treatment." (Id. at ¶ 35). For instance, after being injured and seeking help from the State Insurance Fund, Plaintiff "was forced to return to work"

despite the fact that she had not been given medical clearance to do so. (Id. at ¶¶ 40-41). Moreover, and apparently to that end, the Municipality denied her request for sick leave. (Id.). Plaintiff also points out that she was given the "worst shift[s]" available for her job, and that she was not reimbursed for keeping job-related licenses up to date. Plaintiff says that she was singled out by the Municipality on these issues, as other employees were not treated with such a harsh hand. (Id. at ¶¶ 46-54). Finally, Plaintiff says that the Municipality required her to work in the field, despite the fact that her medical limitations prevented her from performing well. According to the complaint, Defendants orchestrated these actions in order to get her to resign from her job.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-

pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "actual proof of those facts is improbable." Id. Finally, the court assesses whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." Id.

## ANALYSIS

Title VII makes it unlawful "to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This provision "not only covers 'terms' and 'conditions' in the narrow contractual sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.'" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).

Still, Title VII "does not prohibit all verbal or physical harassment in the workplace." Oncale, 523 U.S. 75 at 80. The Supreme Court has "never held that workplace harassment, even harassment between men and women, is *automatically* discrimination because of sex merely because the words used have sexual content or connotations." Id. (our emphasis). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993)(GINSBURG, J., concurring)).

Though "it is a noxious practice, deserving of censure and opprobrium," discrimination on account of an employee's sexual orientation is not proscribed by Title VII. Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999). Consequently, Defendants argue that Plaintiff's complaint fails to state a claim under Title VII because it is grounded on allegations of sexual harassment relating to Plaintiff's sexual preference. On this point, Defendants are right. To the extent

that Plaintiff is pressing a Title VII claim *strictly* on the basis of sexual-orientation discrimination, that claim is foreclosed by Higgins.² "In its current form, Title VII does not provide a remedy to persons who have experienced harassment motivated solely by animus toward the plaintiff's sexual orientation." Id. at 75.

But this does not win the day for Defendants. As we noted above, Plaintiff's complaint survives if it contains sufficient factual allegations showing that "members of one sex are exposed to disadvantageous terms or conditions of employment to which

---

² Though neither party raises the issue, the Court also finds that the complaint fails to state a claim under a theory of "sex-stereotyping" as defined by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). In Price Waterhouse, the Supreme Court held that "an individual who suffered adverse employment consequences because she did not match the social stereotypes associated with her protected group had an actionable claim under Title VII." Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999). In that case, it was evident that plaintiff's superiors discriminated against her because she did not display the typical "femininity" of a woman. Among other things, one partner suggested she was "macho" and another said she needed to take "a course at charm school." Price Waterhouse, 490 U.S. at 235. Here, however, the complaint is barren of any "examples of behavior that her employer or supervisor found to be stereotypically inappropriate." Rivera v. HFS Corp., CIV. 11-1116, 2012 WL 2152072 (D.P.R. June 12, 2012)(Garcia-Gregory, J.). Rather, the complaint centers on sexually inappropriate jokes and comments relating to Plaintiff's sexual preference. As such, it is insufficient to state a claim under Title VII for sex-stereotyping.

members of the other sex are not exposed." <u>Oncale</u>, 523 U.S. at 80. After careful consideration, the Court finds that Plaintiff's complaint contains allegations sufficient to state an actionable claim for sex-based discrimination under Title VII.

Surprisingly, the parties do not discuss in any detail whether the comments and jokes hurled at Plaintiff were made, at least in part, "because of" her sex. As noted above, this is critical in assessing whether there is an actionable claim under Title VII. Plaintiff alluded to, but did not elaborate, this argument in stating that though the comments revolved mainly around her sexual orientation, the fact remains that this case involves "male employees harassing a female employee with sexually provocative and harassing language." (Docket No. 12 at p. 6).

In cases such as this one, where the male-on-female harassment includes sexually inappropriate comments, "[c]ourts and juries have found the inference of discrimination easy to draw." <u>Oncale</u>, 523 F.3d at 80. This is "because the challenged conduct typically involves explicit or implicit proposals of sexual activity" and "it is reasonable to assume those proposals would not have been made to someone of the same sex." <u>Id.</u> The inference is that the sexually inappropriate jokes and advances

Civ. No. 13-1561 (JAG)                                                9

are related to the sex of the victim; or put differently, that the comments were made "because of" the victim's sex.

According to the complaint, her co-workers joked about the fact that "she would change her sexual orientation with one good sexual encounter." (Docket No. 1, ¶ 19). The kicker is that the employees suggested "*they were the men* to help make that change come about." (Id.). So, regardless of whether the comments alluded to her sexual orientation, the complaint makes clear that Plaintiff also suffered unsolicited sexual advances from members of the opposite gender.

Moreover, the complaint also contains allegations independent of the jokes and harassment tending to show that Plaintiff was subject to sex-based discrimination. For instance, after being injured on the job, Plaintiff sought help from the State Insurance Fund. Despite not having medical clearance, the Municipality "forced" Plaintiff to return to work. According to the complaint, this was a "treatment that *her male* and straight co-workers were not subjected to." (Docket No. 1, ¶ 40, our emphasis).[3] The complaint also describes how the Municipality was subject to an audit that revealed its employees did not have

---

[3] A glaring weakness with this allegation, of course, is that it is possible that male co-workers were not subject to that treatment because they were never injured on the job, or that her "straight co-workers" also included women. At this stage, however, we find that this allegation is sufficient to open the doors to discovery.

their respective licenses and certifications up-to-date. Though male employees "have been reimbursed or had the continuing education courses paid for in advance," Plaintiff has had to pay for the licensure requirements herself. (Id. at ¶ 52). In fact, Plaintiff was told directly by the Director of the Municipal Emergency Management Office, Jose Rodriguez-Velez, that she would not be reimbursed "despite her fellow employees being reimbursed." (Id. at ¶ 53).[4]

The allegations described above, taking them in the light most favorable to Plaintiff, plausibly show that she was "exposed to disadvantageous terms or conditions of employment" in comparison to her male co-workers. Oncale, 523 U.S. at 80. Accordingly, the complaint states a plausible claim under Title VII for sex-based discrimination. Defendant's motion to dismiss is therefore **DENIED.**

IT IS SO ORDERED.
In San Juan, Puerto Rico this 15th day of February, 2014.

s/Jay A. Garcia-Gregory
U.S. District Judge

---

[4] When making these allegations, Plaintiff is always careful to state that she was treated differently that her fellow male co-workers. In ¶ 53, she says that the Director denied any petition for reimbursement, despite the fact that her "fellow employees" were being reimbursed. The next paragraph clarifies that those employees were in fact "her male counter-parts." (Id. at ¶ 54). At this juncture, the pleadings must be construed in the light most favorable to Plaintiff, and therefore we must interpret ¶ 53 to mean that the other employees Plaintiff refers to are her male co-workers.