IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARIBEL MALDONADO-CATALA**,

   Plaintiff,

   v.

**MUNICIPALITY OF NARANJITO**, *et al.*,

   Defendants.

Civil No. 13-1561 (BJM)

# OPINION AND ORDER

Maribel Maldonado-Cátala ("Maldonado") sued the Municipality of Naranjito, Orlando Ortiz-Chevres, Marialis Figueroa-Negrón, José Figueroa-Nieves ("Figueroa-Nieves"), Hiram Bristol-Colon, José Tomás Rodríguez-Veléz ("Rodríguez"), and Insurance Company ABC (collectively, "the Municipality"), alleging a hostile work environment and retaliation in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* Docket No. 1. The Municipality previously moved for summary judgment, and that motion was granted in part and denied part. Docket No. 126. Seeking to dismiss the claims that survived summary judgment, the Municipality moved for reconsideration, Docket Nos. 128, 133, and Maldonado opposed, Docket No. 131. The Municipality, as well as the individual defendants, also moved for judgment on the pleadings, Docket Nos. 136–37, 158, both of which Maldonado opposed, Docket Nos. 153, 156. The case is before me on consent of the parties. Docket No. 51.

For the following reasons, Maldonado's claims are **DISMISSED**.

## DISCUSSION[1]

The Municipality contends Maldonado's Title VII sex- and retaliation-based hostile work environment claims fail because a close examination of the record reveals they are ultimately unsupported by admissible evidence.

---

[1] The facts, to the extent not altered by this opinion, are set forth in the opinion at Docket No. 126, and the reader's familiarity with that earlier opinion is assumed.

I.     **Sex-Based Hostile Work Environment**

The previous opinion denied summary judgment on Maldonado's sex-based hostile work environment claim, holding that a reasonable jury could find that (1) she was treated unequally on the basis of gender, and (2) she received harassing messages from one of the Municipality's employees.

A.     **Unequal Treatment**

To establish that the Municipality's decision makers treated her unequally on the basis of gender, Maldonado claimed in her statement of facts that she "is aware of specific examples of co-workers, male, who don't have their licenses to date and were not treated in the same way as her." Docket No. 63 at ¶ 42. In her deposition, she testified that several coworkers told her so. Docket No. 104-2 at 34:8–37:4. The Municipality objected to this testimony as hearsay. Docket No. 117 at 19 ¶ 42. While the previous opinion determined that these statements were not hearsay per Federal Rule of Evidence 801(d)(2)(D), Docket No. 126 at 19 n.14, the Municipality has renewed its hearsay objection in its motion to reconsider. Docket No. 128 at 16–17.

Under Federal Rule of Evidence 801, a statement that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2)(D). While having the employer's authority to speak is no longer of concern under this Rule, *Nekolny v. Painter*, 653 F.2d 1164, 1171 (7th Cir. 1981), the proponent of the evidence has the burden of establishing that the person who made the statement was an "agent" and that the statement concerned a matter within the scope of the agent's employment. *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1440 (9th Cir. 1990). In *Merrick*, for example, an employee of Farmers Insurance Group alleged discrimination, and attempted to introduce statements made by "insurance agents and one of [the employer's] district managers." *Id.* The trial court sustained the hearsay objection, and the Ninth Circuit affirmed, because the employee failed to show

that those persons were either agents of the employer, or that the statements concerned a matter within the scope of that agency. *Id.*

The Municipality similarly contends that Maldonado failed to show that the statements she seeks to introduce concerned a matter within the scope of her coworkers' employment. Docket No. 128 at 17 ¶ 25. Maldonado's only response is to state in a conclusory and cryptic manner that "the statements are made during the performance as employees of the policy regarding the policy of the same towards them." Docket No. 131 at 9 ¶ 32. As in *Merrick*, this conclusory response is insufficient to establish that the statements made by Maldonado's coworkers concerned a matter within the scope of their employment. 892 F.2d at 1440. Having failed to make the requisite showing, Maldonado has not demonstrated that the statements are capable of being reduced to an admissible form. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Moreover, a closer examination reveals that the statements were made by her coworkers, not any of the Municipality's decision makers. Docket No. 104-2 at 36:14–22. This is significant because "not everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998). In *Williams*, for example, the employee attempted to establish a "pattern and practice of discriminatory decisionmaking" by introducing the statements of five other employees who "voiced . . . their unhappiness with their jobs and with their supervisors." *Id.* The Seventh Circuit noted that there was "no evidence that any of the five women were privy to or participated in [the employer's] decisions affecting them," and held that the statements were hearsay. *Id.* It held so because "[a]lthough the women knew the outcomes of the managerial decisions at issue and the effects that those decisions had on them, the decisionmaking process itself . . . was outside the scope of the women's agency or employment." *Id.*; *cf. Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1094 (1st Cir. 1995)(statement in employee's affidavit, which contained statement made by his supervisor during a "management meeting," was not hearsay even though it was offered

to prove the management's discriminatory animus toward older workers). Because Maldonado relies on statements by her coworkers, and not the Municipality's decision makers, there is no admissible evidence that Municipality's decision makers precluded Maldonado from working as an emergency medical technician on the basis of her gender.

### B. Facebook Messages

Maldonado claimed in her statement of facts that "[t]he message she received on November 1, 2010 was sent from the Municipality's Emergency Management Office [("EMO")]," Docket No. 104 at 62 ¶ 31, and that this message was sent by Figueroa Nieves. *Id.* at 63 ¶ 47.[2] On summary judgment, all materials relied on to support a factual position must be admissible as evidence, *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993), or capable of being reduced to an admissible form. *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

The relevant portions of Maldonado's deposition testimony do not meet these requirements. Maldonado claims only one of the Facebook messages—the November 1, 2010 message—is traceable to the Municipality. Docket No. 104-1 at 58–59. And to establish that this message came from the EMO,[3] Maldonado relied on hearsay—specifically—on information she received from a Puerto Rico Police Department ("PRPD") officer. Docket No. 104-1 at 58–59. PRPD Officer Jackeline Candelaria Curbelo ("Candelaria") was the person in charge of investigating Maldonado's complaint. Docket No. 88 at 15. In her deposition, Candelaria admitted that she could not "trace

---

[2] I previously explained why there was insufficient evidence to establish that Figueroa-Nieves was at the EMO on November 1, 2010, and that determination is not challenged at this point. Docket No. 126 at 16 n.10.
[3] While the previous opinion deemed this fact admitted because Maldonado supported the statement with her own deposition testimony, closer examination reveals it is hearsay. *Id.*

Case 3:13-cv-01561-BJM   Document 159   Filed 04/11/16   Page 5 of 11

Maldonado-Catala v. Municipality of Naranjito, et al., Civil No. 13-1561 (BJM)                                      5

back the message posted on November 1 . . . to a computer in the municipality." Docket No. 88 at 34:13–15. For her part, Maldonado admitted that she does not know the identity of the person or persons who sent any of the Facebook messages, Docket No. 104-1 at 58, and acknowledges in her reply to the motion to reconsider that the "source" of the Facebook messages has not been identified. Docket No. 131 at 6 ¶ 17. What is more, suggesting a non-employee could have sent one of the Facebook messages, the Municipality's Information Technology Director, Walker A. Rivas-Cuba, filed a declaration stating that the Municipality's Internet Protocol ("IP") address permits internet access to any device that is within the Municipality's location. Docket No. 72 at ¶ 13. Because Maldonado does not know who sent the Facebook messages, and has insufficient evidence tracing those messages to one of the Municipality's computers, a reasonable jury could not find that one of the Municipality's employees sent the Facebook messages.

Moreover, even if the Facebook messages were considered, a reasonable jury could not find that they created an abusive work environment. As an initial matter, the Municipality acknowledges that "[c]ourts . . . permit evidence of non-workplace conduct to help determine the pervasiveness and severity of the hostility." *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409 (1st Cir. 2002); Docket No. 128 at 9 ¶ 12. Yet, the nub of their contention is that a plaintiff seeking to establish a hostile work environment claim must ultimately show that she was subjected to "an *abusive work environment*." *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (emphasis added) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)); *see also Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (court considered five comments coworker made and found that they did not alter the terms and conditions of employment where "the most serious . . . occurred at a private club, not in the workplace"); *Mayes v. Bd. of Educ.*, No. JFM-13-3086, U.S. Dist. LEXIS 168513, *1 (D. Md. Nov. 26, 2013) ("To the extent that plaintiff asserts a claim for hostile work environment after July 15, 2011, her claim is barred by

the fact that she was not at work but on leave from November 2010 to January 17, 2013"). In *Pueschel*, for example, the court affirmed summary judgment on the employee's hostile work environment claim, holding that she could not "demonstrate that she was part of the working environment that she allege[d] was abusive." 577 F.3d at 565. It held so because the employee was on leave without pay when the alleged incidents occurred. *Id.*

As in *Pueschel*, Maldonado received the harassing messages when she was on unpaid leave. 577 F.3d at 565. Specifically, it is undisputed that she was not in the workplace from July 2010 to April 2012, and that she received the various Facebook messages around December 2010 and November 2011. Docket No. 126 at 4–7. When Maldonado returned to work, moreover, she maintained a "cordial" and "professional" relationship with Figueroa-Nieves, who allegedly had harassed her on previous occasions; she also does not point to admissible evidence supporting other incidents of harassment after she returned to work. Docket No. 63 at ¶ 169; Docket No. 104 at 12 ¶ 169. What is more, the record evidence does not indicate the Facebook messages affected her work performance after she returned, as she received a "very good" employment review while working at the EMO call center. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (courts consider whether the alleged harassment affected the employee's "work performance"). Thus, Maldonado has insufficient evidence to link the Facebook messages to one of the Municipality's employees, or to demonstrate that she was subjected to a gender-based hostile work environment. Accordingly, summary judgment is granted on her Title VII gender-based hostile work environment claim.

## II.     Retaliation-Based Hostile Work Environment

The previous opinion held a reasonable jury could find that Maldonado endured a retaliatory hostile work environment after participating in a sexual harassment investigation against Bristol, reasoning that genuine disputes of material fact existed as to whether she subsequently (1) was treated unequally; (2) received threatening Facebook

messages from one of the Municipality's employees; and (3) was subjected to an antagonistic statement in 2012 by Rodríguez, the EMO supervisor at the time. For the reasons explained above, there is no admissible evidence supporting the first two reasons—leaving only Rodriguez's alleged statement. As an initial matter, Maldonado admitted that Rodriguez did not say he was going to make her a janitor, Docket No. 104 at 39 ¶ 237, while stating in another portion of her statement that he did make that antagonistic statement. *Id.* at 62 ¶ 34. This dispute is ultimately immaterial at this juncture for two reasons. First, even if the statement was made, an isolated and offhand comment is insufficient to establish a hostile work environment. *Faragher*, 524 U.S. at 788 ("offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'").

Second, and more importantly, the Municipality contends without Maldonado arguing to the contrary that the record lacks evidence demonstrating that Rodriguez, who began working for the Municipality in 2011, knew of Maldonado's participation in the sexual harassment investigation against Bristol in 2010. *Compare* Docket No. 128 at 6–7 ¶ 8, *with* Docket No. 131. The lack of evidence indicating that he had such knowledge would preclude a reasonable jury from finding that he retaliated against Maldonado for engaging in the internal investigation against Bristol. *See Alvarado v. Donahoe*, 687 F.3d 453, 459 (1st Cir. 2012) (where employee sought to establish a retaliatory hostile work environment by including incidents involving "individuals who seemingly had no knowledge of his protected activity," the employee could not rely on those incidents to establish his claim).

What is more, the temporal proximity between the sexual harassment investigation in October 2010 and Rodriguez's statement in April 2012 further militates against a causal link. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (18-month delay between protected activity and alleged adverse action, in addition to other evidence discrediting a retaliatory animus, negated inference of retaliation); *accord*

*Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 110–11 (1st Cir. 1988) (long period of delay between protected conduct and ultimate discharge negates inference of retaliation) Thus, summary judgment is granted on Maldonado's Title VII retaliation-based hostile work environment claim.

### III.　　Timeliness of Title VII Claims

The Municipality contends that Maldonado's evidentiary shortcomings detailed above also have implications for the timeliness of her claims. Docket No. 128 at 6–7 ¶ 8. Maldonado filed her EEOC charge on May 24, 2012, and did not first file a charge with the Puerto Rico Department of Labor. Docket No. 126 at 10. Accordingly, it is undisputed at this juncture that the limitations period extended as far back as November 26, 2011. *Id.* For purposes of Maldonado's hostile-work-environment claims, the previous opinion determined that two facts occurring in 2012, which were disputed by the parties, allowed consideration of incidents occurring before November 26, 2011: that the Municipality precluded Maldonado from working as an EMT in April 2012, and that Rodriguez made an antagonistic out of a retaliatory animus around that same time. *Id.* at 12. The Municipality contends that because the anchoring acts lack evidentiary support, incidents occurring before November 26, 2011 are time-barred. Docket No. 128 at 6–7. Maldonado did not address this particular argument in her opposition to the Municipality's motion to reconsider. *See* Docket No. 131. In any event, having determined that the two anchoring acts lack evidentiary support, incidents occurring before November 26, 2011—to the extent they could establish Maldonado's hostile work environment claims—are time-barred.

### IV.　　State-Law Claims

The complaint alleged violation of various state-law provisions: (1) Law 100, P.R. Laws Ann. tit. 29, § 146 *et seq.*; (2) Law 17, *id.* § 155 *et seq.*; (3) Law 69, *id.* § 1321 *et seq.*; (4) Law 115, *id.* § 194(a); (5) Article 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142; and (6) Article II, Section 1 of the Puerto Rico

Constitution. Docket No. 1 at 12. Maldonado has conceded that her Law 100 claim should be dismissed, and has not disputed the prior dismissal of her Law 115 claim. Docket Nos. 153 at 1–2 at ¶ 2, 156.

The Municipality and the individual defendants contend that Maldonado's Law 17, Law 69, and Article 1802 and 1803 claims—all of which carry a one-year statute of limitations—are time-barred. *See Matos Ortiz v. Com. of P.R.*, 103 F. Supp. 2d 59, 63–64 (D.P.R. 2000) ("A one-year statute of limitations applies to torts in Puerto Rico," and with respect to claims arising under "Law 17 and Law 69 . . . the one-year tort limitations period applies"). In response, Maldonado holds fast to the arguments she made in her summary-judgment opposition and the previous opinion's reasoning as to the timeliness of her Title VII claims. Docket Nos. 153 at 4–5, 156. She did not, however, raise new arguments in support of the timeliness of her state-law claims, particularly in the event that the two incidents which previously anchored her Title VII claims lacked evidentiary support. *See* Docket Nos. 153 at 4–5, 156.

Maldonado lodged an EEOC charge in May 2012, and filed the complaint in this case in July 2013. Docket No. 1. "The Puerto Rico Supreme Court has squarely held that the filing of an administrative charge before the EEOC effectively tolls the statute of limitations for actions under Puerto Rico Laws 100, 17 and 69." *Soto-Caro v. Velez-Lorenzo*, No. 14-1100 (SEC), 2015 WL 9412530, at *4 (D.P.R. Dec. 22, 2015) (citing *Suarez Ruiz v. Figueroa Colón*, 98 TSPR 30 (P.R. Mar. 25, 1998)). And while the Municipality acknowledges that Maldonado participated in the internal investigation against Bristol, it contends without Maldonado arguing to the contrary that this event did not toll the limitations period. *See Sanchez v. A.E.E.*, No. RE-93-267, 1997 WL 878520 (P.R. Apr. 9, 1997) (internal investigation by employer did not toll the statute of limitations); *compare* Docket No. 136, *with* Docket Nos. 153, 156. Because only the filing of the EEOC charge tolled the limitations period, claims that predate May 2012 are time-barred. Maldonado was on unpaid leave from July 2010 until April 2012, and all the

Maldonado-Catala v. Municipality of Naranjito, et al., Civil No. 13-1561 (BJM)                    10

incidents she complains of, and for which she has evidentiary support, occurred before the end of 2010. Even assuming, for the moment, that the limitations period began at the end of 2010, the interim time period up to May 2012 exceeds one year. For this reason, Maldonado's Law 17, Law 69, and Article 1802 and 1803 claims are time-barred and thus dismissed.

Moreover, even if Maldonado's Article 1802 and 1803 claims were not time-barred, dismissal is proper as to these claims because they attempt to shoehorn the same facts which form the basis of her employment law claims. *See* Docket No. 1 ¶ 67 ("Plaintiff repeats and incorporates all the allegations contained thus far as set forth fully herein" for her claims relating to "Article 1802 and 1803 of the Puerto Rico Civil Code"). Where "Article 1802 and 1803 claims are based on the same facts that give rise to asserted causes of action under Puerto Rico's special employment statutes," the Article 1802 and 1803 claims are not cognizable. *Reyes-Ortiz v. McConnell Valdes*, 714 F. Supp. 2d 234, 239 (D.P.R.), *amended sub nom. Ortiz v. Valdes*, 714 F. Supp. 2d 230 (D.P.R. 2010). This is so because these provisions are "supplementary to special legislation," meaning that "to the extent that a special labor law covers the conduct for which a plaintiff seeks damages, she is barred from using that same conduct" to establish liability under Article 1802 and 1803. *See Aguirre v. Mayaguez Resort & Casino, Inc.*, 59 F. Supp. 3d 340, 357 (D.P.R. 2014).

The Municipality contends that the remaining claim alleging a violation of Article II, Section 1 of the Puerto Rico Constitution should be dismissed. Docket No. 136 at 20–22. This state constitutional provision provides that "[n]o discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas." P.R. Const. art. II, § 1. This court has repeatedly noted that the Puerto Rico Supreme Court has not recognized a "private cause of action for sex discrimination" under Article II, Section 1 of the Puerto Rico Constitution, and Maldonado does not cite any authority indicating a change in Puerto Rico law. *Maldonado-Gonzalez v. P.R. Police*,

927 F. Supp. 2d 1, 13 (D.P.R. 2013); *accord Mejias Miranda v. BBII Acquisition Corp.*, 120 F. Supp. 2d 157, 172 (D.P.R. 2000); *Santiago v. Canon U.S.A., Inc.*, No. CIV. 93-2225 (DRD), 1997 WL 188453, at *5 n.2 (D.P.R. Mar. 7, 1997), *aff'd*, 138 F.3d 1 (1st Cir. 1998). Because the Puerto Rico Supreme Court has not recognized this claim, this court has previously declined to consider it. *Mejias Miranda*, 120 F. Supp. 2d at 173 (court "refuse[d] to trailblaze" claim raising a novel question of state law); *see also* 28 U.S.C. § 1367(c)(1). Accordingly, this claim is dismissed because (1) no private cause of action for sex-based discrimination has been recognized under the Puerto Rico Constitution, (2) Maldonado lacks evidentiary support for a sex-based discrimination claim, and (3) it raises a novel question of state law.

## CONCLUSION

For the foregoing reasons, the motions to reconsider and for judgment on the pleadings are **GRANTED**. All claims against all defendants are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 11th day of April 2016.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge